IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02514-RBJ-MEH

DENISE TRAYNOM, and
BRANDON K. AXELROD,

      Plaintiffs,

v.

CINEMARK USA, INC.,

      Defendant.
_____

Civil Action No. 12-cv-02517-RBJ-MEH

JOSHUA R. NOWLAN,

      Plaintiffs,

v.

CINEMARK USA, INC.,

      Defendant.
_____

Civil Action No. 12-cv-02687-RBJ-MEH

DION ROSBOROUGH,
RYAN LUMBA,
TONY BRISCOE,
JON BOIK, next friend of Alexander Boik, and
LOUIS DURAN,

      Plaintiffs,

v.

CINEMARK USA, INC.,

      Defendant.

_____

Civil Action No. 12-cv-02704-RBJ-MEH

JERRI JACKSON,

     Plaintiff,

v.

CINEMARK USA, INC.,

     Defendant.

_____

Civil Action No. 12-cv-02705-RBJ-MEH

GREGORY MEDEK, and
RENA MEDEK,

     Plaintiffs,

v.

CINEMARK USA, INC.,

     Defendant.

_____

Civil Action No. 12-cv-02706-RBJ-MEH

THERESA HOOVER,

     Plaintiff,

v.

CINEMARK USA, INC.,

     Defendant.

_____

Civil Action No. 12-cv-02900-RBJ-MEH

IAN SULLIVAN,

      Plaintiff,

v.

CINEMARK USA, INC.,

      Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court are the Defendant's consolidated Motions to Dismiss [filed October 18, 2012 (12cv2514); docket #15], [filed October 18, 2012 (12cv2517); docket #19], [filed November 7, 2012 (12cv2687); docket #17], [filed October 18, 2012 (12cv2704); docket #7], [filed October 18, 2012 (12cv2705); docket #6], [filed October 18, 2012 (12cv2706); docket #7], and [filed November 6, 2012 (12cv2900); docket #7]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matters are referred to this Court for recommendation. The motions are fully briefed, and the Court heard oral argument on December 14, 2012. Based upon the entire record contained herein, the Court RECOMMENDS that Defendant's motions be **granted in part and denied in part**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and

# BACKGROUND

Although the Plaintiffs are represented by different counsel and bring separate actions against the Defendant, the injuries complained of occurred at the same time and as a result of the same event. Consequently, the allegations raised in the Plaintiffs' pleadings are substantially similar, as are the arguments raised in the present motions. With the parties' consent, Judge Jackson consolidated the present motions for adjudication.

Here, relying upon the well-pleaded factual allegations made by the Plaintiffs in the operative pleadings, the Court repeats the Plaintiffs' allegations of fact (as opposed to legal conclusions, bare assertions, or merely conclusory allegations), which are taken as true only for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.    Allegations of Fact

Before July 20, 2012, Defendant had information that previous disturbances, incidents, disruptions and other criminal activities had taken place at or near the property of the theater. These incidents most commonly took place during the evening hours. Based upon this knowledge, Defendant hired various security personnel, including off-duty law enforcement officers from the City of Aurora Police Department. Such security personnel were not present at all times the theater was open; rather, those guards were placed on Friday and Saturday nights only.

Included in the previous incidents near the theater was at least one shooting, involving gang

---

recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

members.  However, Plaintiffs do not allege a single prior shooting incident at the theater.  These previous incidents also included assaults and robberies.

The theater advertised and sold tickets to the July 20, 2012 midnight premier of the movie, "*The Dark Knight Rises.*"  Defendant charged people who attended the movie, and the theater showed the movie in more than one auditorium because of the large crowds the theater anticipated.  No security personnel were present for that showing; however, security personnel were present at the theater earlier in the day, when box office cash was being transferred.

The exterior doors to the theater were lacking in any alarm system, interlocking security systems, or any other security or alarm features.  Defendant did not have in place any security practices or procedures, nor did it employ or adequately train any employee or security personnel to prevent or deter someone from surreptitiously entering or re-entering the theater through an unlocked and unalarmed door.

The theater had public parking available on all sides of the theater, including behind Auditorium 9 in which the incident occurred.  There was no system or procedure for theater employees to survey or monitor the parking areas and external doors behind or to the sides of the theater.

One of the people present in the theater at the midnight showing made a surreptitious entry by entering the theater on at least one occasion through a door that was located at the right, front side of the screen inside Auditorium 9.  Hereinafter, that person will be referred to as "the gunman."  The gunman purchased a ticket and entered the theater initially through the normal patron entrance.  Later, after the theater lights were darkened and the screen projection began, the gunman left his seat and moved to an exterior door, located at the right, front of the movie screen, exiting to the parking

area.

At some point, the gunman moved his car so that he was parked very near to the exterior door to Auditorium 9.  While the screen projection continued in the darkened theater, the gunman opened the exterior door to Auditorium 9, put the door in a position where it would remain open, and went to his car where he had earlier parked outside that exterior door.  That door was unlocked and had no alarm or other monitoring system to guard against the door being kept open or to warn that the door was open and remained opened for an extended period of time. The gunman had parked his car in the available parking spaces directly outside of the exterior door to Auditorium 9.

The gunman had a small arsenal of weapons, including, but not limited to, one or more fully loaded shotguns, an AR-15 assault rifle, one or more fully loaded, semi-automatic Glock handguns, and several tear gas canisters.  The gunman also retrieved and put on body armor and a gas mask. He also had significant amounts of ammunition, including a fully loaded "banana clip" for the assault rifle.

The gunman made one or more trips from his car through the open exterior door of Auditorium 9, bringing his arsenal and ammunition through that open door.  Plaintiffs' Complaints do not identify whether there was some sort of foyer or other buffer between the outer door and the theater, or whether the gunman was actually accumulating weapons in the auditorium itself. Throughout that time, no employee or security personnel contacted the gunman, deterred him, monitored him or stopped him from that re-entry.

Plaintiffs Denise Traynom, Brandon Axelrod, Joshua Nowlan, Dion Rosborough, Ryan Lumba, Tony Briscoe, and Louis Duran attended the July 20, 2012 midnight showing of "*The Dark Knight Rises*."  Also in attendance were Alexander J. Boik, Veronica Moser-Sullivan, Micayla

Medek, and Matthew McQuinn.[2]  These individuals were among members of the public who purchased tickets to see the movie from Defendant and were seated in Auditorium 9 of the Century Aurora 16.

The gunman began his assault by throwing tear gas canisters into the auditorium. The gunman was still standing near the doorway at the bottom of the theater, to the right of the screen, when he began the assault.  During the incident, the gunman opened fire with various firearms and shot numerous people.  Many individuals in Auditorium 9, and at least one person in Auditorium 8, were struck by gunfire.

Plaintiff Nowlan ducked down behind the seats, because people trying to escape were being shot by the gunman.  Mr. Nowlan was shot in his right arm, nearly severing the arm.  He was also shot in his left leg.  He suffered significant and disabling injuries to his arm and leg.  Eventually, Mr. Nowlan was assisted by members of the Aurora Police Department, who removed him from the theater.  Because there were no ambulances available, those police officers put Mr. Nowlan in an Aurora patrol car and drove him to the hospital themselves.

Plaintiffs Traynom and Axelrod ducked down behind the seats, because people trying to escape were being shot by the gunman.  Ms. Traynom was shot in the gluteus maximus, and Mr. Axelrod suffered significant orthopedic injuries to his right knee and ankle.

Plaintiffs Rosborough, Lumba, Duran were struck by gunfire while attempting to flee Auditorium 9.  Alexander J. Boik was struck by gunfire and killed.

Matthew McQuinn used his body to shield his girlfriend from the gunfire; he was struck by

---

[2]These individuals are represented in this action by their parents or next friends, but for ease of reference they will be included in the Court's references to "Plaintiffs."

gunfire died in the theater complex.  Micayla Medek was struck in the chest by gunfire causing catastrophic injuries to her lungs, heart and spine; she died in the theater complex.  Veronica Moser-Sullivan suffered fatal wounds from gunfire and died in the theater complex.

After the initial episode where the gunman threw the tear gas canisters, the gunman continued shooting people for many minutes.  All through the incident, the movie continued to play, and the houselights remained very low or off.  There was no alarm activated during the period the gunman was stockpiling his arsenal and while he was inside the theater shooting people.  Theater employees took no action to evacuate the people left in Auditorium 9.  No security personnel and no theater employee intervened during the entirety of the incident.

The gunman continued shooting throughout the Auditorium until eventually his weapon jammed.  Then, the gunman walked back out of the theater through the same door he used to enter and sat in his car.  It took several minutes for law enforcement to arrive.  During the entirety of that time, the movie continued playing, and the house lights remained very low or off.

## II.    Procedural History

Based upon the allegations set forth above, the Plaintiffs bring claims for negligence, for wrongful death (as applicable), and for violations of the Colorado Premises Liability Act, Colo. Rev. Stat. 13-21-115 *et seq.* ("CPLA").  With respect to the CPLA, the Plaintiffs identify the following as alleged "dangers or dangerous conditions" existing on the premises:

    a.    Failure to employ and have present at the time of the showing of this movie security guards (including, but not limited to, off-duty law enforcement officers) to protect against and reduce the risk of unlawful conduct that posed a risk of injury or death to patrons;

    b.    Failure to provide reasonable protection against surreptitious, unauthorized entry into the darkened theater viewing areas;

c.      Failure to provide reasonable door entry security devices, including, but not limited to, automatic locking doors, alarms, warning signals and other such devices on the door located the right, front of Auditorium 9;

d.      Failure to provide other reasonable security devices such as one-way security doors, exit doors interlocked with warning signals, alarms, light or other devices which would put personnel on notice of any surreptitious, unauthorized entry into the darkened theater viewing areas;

e.      Failure to develop, establish and institute adequate emergency or first-aid response and evacuation plans and procedures for patrons in the theater in the event circumstances called for such procedures;

f.      Failure to properly train employees in emergency, crisis and first-aid response and evacuation procedures;

g.      Failure to properly train employees or provide reasonable surveillance procedures including, but not limited to, surveillance devices, monitors, cameras and human surveillance or monitoring of suspicious activity.

Amended Complaint, 12-cv-02514-RBJ-MEH, § 46, docket #14 at 8-9.

In response to the Complaints, Defendant filed the present motions to dismiss arguing that Plaintiffs fail to state claims under the CPLA because they fail to assert facts supporting the claim's required element that the mass shooting was foreseeable as a matter of law.  Further, Defendant contends the Plaintiffs fail to state negligence or wrongful death claims, because the CPLA is the exclusive remedy for injuries occurring while on the landowner's property and by reason of the condition of such property or activities conducted, or circumstances existing, on such property.

Plaintiffs respond that Defendant improperly restricts the definition of "danger" set forth in the CPLA to the mass shooting, rather than to the conditions of the premises or to general criminal activity that occurred previously at or near the theater.  Plaintiffs assert that the Defendant's hiring of security personnel on nights anticipated to be crowded at the theater demonstrates that third-party criminal activity was foreseeable, or was a danger about which the theater knew or should have

known.  Furthermore, the Plaintiffs claim that discovery is necessary to determine whether their negligence or wrongful death claims are premised upon the Defendant's duty as a landowner, rather than on other unidentified duties owed to Plaintiffs.

Defendant replies the CPLA requires that the danger which caused the injury is the same danger about which Defendant must have known or should have known.  Defendant argues that, here, the injury-causing event was the mass shooting, and that such mass shooting is the danger about which the Plaintiffs must eventually prove the Defendant knew or should have known to define its duty to protect the Plaintiffs.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011).

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC,* 656 F.3d at 1215.  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

In its motions, Defendant argues the mass shooting itself is not reasonably foreseeable as a matter of law and, thus, Defendant should not be held liable under the CPLA.  Further, Defendant contends that the CPLA is the exclusive remedy for damages against landowners and, thus, Plaintiffs have failed to state claims for negligence and wrongful death.  With the applicable legal standard in mind, the Court will analyze each claim to determine whether Plaintiffs have stated plausible claims for relief.

### I.    Colorado Premises Liability Act

For purposes of these motions, it is undisputed that Defendant is a "landowner" and the Plaintiffs are "invitees" under the statute.

The CPLA provides, in relevant part, "In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section." Colo. Rev. Stat. § 13-

21-115(2) (2012).  With respect to an "invitee," a landowner, subject to exceptions not applicable here, is liable for injuries caused by the failure "to exercise reasonable care to protect against dangers of which he actually knew or should have known." Colo. Rev. Stat. § 13-21-115(3)(c)(I) (2012).

Defendant contends that this Court should follow the analysis and holding in *Lopez v. McDonald's*, 193 Cal. App. 3d 495 (Cal. Ct. App. 1987) and conclude that the mass shooting is not foreseeable as a matter of law.  Further, Defendant argues that "foreseeability" and the statute's language "should have known" are synonymous, and that the mass shooting is a danger about which a commercial enterprise should not have known as a matter of law.

A.    Interpretation of CPLA

The CPLA provides that "the judge shall determine whether the plaintiff is a trespasser, licensee or invitee ... [t]he issues of liability and damages in any such action shall be determined by the jury or, if there is no jury, by the judge." Colo. Rev. Stat. § 13-21-115(4) (2012).  The Colorado Supreme Court has interpreted this section as follows:

> At common law the existence of a duty was a question of law to be determined by the court. Under the premises liability statute, the only issue of law to be determined by the court is the classification of the injured plaintiff; liability and damages are questions of fact to be determined by the finder of fact. In keeping with our responsibility to give effect to every word and term contained within the statute, if possible, **a judge's common law obligation to determine the existence of landowner duties is inconsistent with the limited role the statute assigns the judge, and would impermissibly enlarge the role of the court beyond that indicated in the statute's plain language.**

*Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004) (en banc) (citations omitted) (emphasis added);

*see also Wycoff v. Grace Commun. Church of the Assemblies of God*, 251 P.3d 1260, 1265 (Colo. App. 2010) ("[a] landowner's duties turn on a **trial court's determination** of whether the plaintiff

was an 'invitee,' a 'licensee,' or a 'trespasser.'") (emphasis added).  Therefore, the Colorado

Supreme Court makes clear that the common law analysis of the existence of a duty no longer

applies for claims brought under the CPLA by persons alleging injury that occurred on the property

of another and arose out of a condition of the property or by activities conducted on the property.

### B.    Applicability of *Lopez*

Defendant contends that the opinion in *Lopez* is directly on point and should be followed by

this Court to conclude that the mass shooting is not foreseeable by a commercial landowner as a

matter of law.  In *Lopez*, the California Court of Appeals affirmed the trial court's summary

judgment decision in favor of McDonald's that the company owed no duty to the plaintiffs because

the "mass murderous assault" that occurred in a McDonald's restaurant was not foreseeable as a

matter of law.  193 Cal. App. 3d at 500.  In so affirming, the *Lopez* court cites the general rule in

California that "all persons have a duty to employ ordinary care to prevent others from being injured

as a result of their conduct."  *Id.* at 505.  This general rule arose from the California Supreme

Court's opinion in *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968) in which the court removed from

the duty analysis the status of the plaintiff as invitee, licensee or trespasser.  *Id.* at 568 ("The proper

test to be applied to the liability of the possessor of land ... is whether in the management of his

property he has acted as a reasonable man in view of the probability of injury to others, and,

although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving

rise to such status have some bearing on the question of liability, the status is not determinative.");

*see also Campbell v. Ford Motor Co.*, 206 Cal. App. 4th 15, 27, 141 Cal. Rptr. 3d 390, 398-99 (Cal.

Ct. App. 2012).

The *Lopez* court cites *Rowland* in describing the factors that must be analyzed by a court in

determining whether a duty of care exists, one of which is the foreseeability of harm to the plaintiff. *Lopez*, 193 Cal. App. 3d at 506 ("The *Rowland* analysis of landowner liability directs the court to weigh the foreseeability of harm with a nonexhaustive list of other factors and policy considerations in determining whether liability should be restricted within the factual context of a specific case."). In analyzing whether McDonald's owed the plaintiffs a duty of care, the *Lopez* court found that it must determine whether the risk of harm was reasonably foreseeable (*id.* at 508) and, considering the totality of the circumstances, concluded that the "mass murderous assault" was not foreseeable. *Id.* at 509.

This Court concludes that the *Lopez* analysis is not applicable in this case. First, California's general rule concerning duty of care, as stated by the *Rowland* court, is inconsistent with a landowner's duties of care described in the CPLA. The Colorado legislature specifically set forth the scope of a landowner's duty in the CPLA based upon the status of the plaintiff as an invitee, licensee or trespasser. Colo. Rev. Stat. § 13-21-115(3). Second, the *Lopez* court engaged in a foreseeability analysis while determining the **existence** of a duty.[3] Such analysis is proper under the

---

[3]The same is true in other cases relied upon by the Defendant. *See, e.g., Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 169-170 (Minn. 1989) (based upon evidence of the condition and characteristics of the premises, the court found the parking ramp operator owed a duty to use reasonable care to deter criminal activity); *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 258 (Neb. 2003) (analyzing strict liability claim, court found manufacturer owed no duty to guard against criminal acts where evidence demonstrated the product defect was not the proximate cause of the injury); *Feld v. Merriam*, 485 A.2d 742, 745-47 (Pa. 1984) (distinguishing a public business inviting customers from private property, the court found that a landlord owes no duty to protect its tenants from third-party criminal activity); *Doe v. Grosvenor Props. Ltd.*, 829 P.2d 512, 518 (Haw. 1992) (finding that, even if plaintiff was invitee, landlord owed no duty to protect where the evidence showed nothing putting landlord on notice of security problems); *Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 62-63 (Mo. App. 2002) (determining the duty owed by a business owner to a business invitee to protect the invitee from third party's criminal acts requires analysis of totality of facts and circumstances).

common law; however, as the Colorado Supreme Court has made clear, such analysis is improper under the CPLA. *Vigil*, 103 P.3d at 328 ("a judge's common law obligation to determine the existence of landowner duties is inconsistent with the limited role the statute assigns the judge, and would impermissibly enlarge the role of the court beyond that indicated in the statute's plain language.").[4]  Again, the statute imposes upon landowners specific duties of care, depending upon the status of the plaintiff.  Thus, whether a duty exists under the CPLA is determined based only upon whether the defendant is a landowner and, if so, the scope of the duty is based upon whether the plaintiff is an invitee, licensee or trespasser.

C.    Stating a Claim under the CPLA

So, if it is undisputed in this case that the Defendant is a landowner and the Plaintiffs are invitees, and the scope of the duty has been defined by statute, what is the proper analysis at this stage of the litigation?  According to the Colorado Supreme Court, "a landowner clearly can argue that he owed no duty under the statute" to an invitee by arguing that he did not actually know of the danger, that there are no circumstances demonstrating he should have known about the danger, and that he exercised reasonable care or did not unreasonably fail to do so.  *Vigil*, 103 P.3d at 330. However, there is no indication in *Vigil* that these arguments are properly made under a Rule 12(b)(6) analysis of the four corners of the Complaint.  Indeed, such arguments are historically and logically considered at the summary judgment stage, taking into consideration the fruits of the

---

[4]In fact, the Colorado Supreme Court recognized the conclusions of "two well-respected commentators" that "[d]ecades of evolution in the common law were swept aside by 1986 House Bill 1205 [the premises liability statute]. That legislation changed the rules to such an extent that Colorado appellate decisions based upon common-law principles are of little or no authority for claims subject to the new legislation."  *Vigil*, 103 P.3d at 329 (quoting 7 John W. Grund & J. Kent Miller, *Colorado Personal Injury Practice - Torts and Insurance* § 19.1, at 310 (2d ed. 2000)).

discovery process.

Here, Defendant contends that "foreseeability" and the statutory language, "should have known," are synonymous, and that Plaintiffs fail to state facts supporting a claim that the mass shooting is a foreseeable danger.  In other words, Defendant appears to argue that the facts, taken as true, fail to demonstrate Defendant should have known about the mass shooting.  Plaintiffs counter that the dangers about which Defendant should have known were the previous dangerous and criminal activity at the theater and the condition of the premises – the alleged unsecured, unmonitored exit door, the lack of security personnel, etc.[5]  In light of these dangers, Plaintiffs claim that their facts, taken as true, demonstrate Defendant knew or should have known that patrons may be at risk of injury from crime occurring in the crowded theaters due to such conditions.

Both the mass shooting and the lack of security, monitoring, etc. are contemplated by the CPLA as causes of injuries to persons on the defendant's property.  That is, the statute provides, "[i]n any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section." Colo. Rev. Stat. § 13–21–115(2).  Here, Plaintiffs allege their injuries occurred while at the theater and by reason of the **condition** of the property.  Defendant's theory necessarily states that the injuries occurred while at the theater and by reason of an **activity conducted or circumstances existing** on the property.  Each theory, on its face, appears to be a

_____

[5]These alleged dangers are listed above, under the "Procedural History" section. Although only Plaintiffs Traynom, Axelrod and Nowlan specify in their Amended Complaints that the lack of security and monitoring on the premises are dangerous conditions about which Defendant should have known, the parties agree that the Plaintiffs' claims and arguments are consolidated for the purpose of adjudicating the present motions.

proper interpretation of the CPLA.

Defendant contends that Plaintiffs' theory is improper as "putting the cart before the horse." According to Defendant, an unsecured, unmonitored exit door in a movie theater is not, on its own, dangerous, and the lack of security measures about which Plaintiffs complain actually goes to the question of whether Defendant took reasonable care to protect its patrons. But, through its own theory, Defendant asks the Court to find that the sole cause of Plaintiffs' injuries was the mass shooting. Certainly, such finding is improper at this early stage of the litigation. However, even if Defendant were correct and the Court were to accept only Defendant's theory of the case, the Court finds that dismissal of the CPLA claim before the exchange of discovery would be improper.

Plaintiffs allege that, prior to the mass shooting at issue here, Defendant had information of previous criminal activity, including assaults, robberies and a gang shooting, that occurred at or near the theater and, based upon such information, hired off-duty law enforcement officers from the City of Aurora Police Department to be present on Friday and Saturday nights when the theater typically was crowded. Plaintiffs further allege that the exterior theater doors lacked alarms, monitoring and interlocking security systems, and that no security personnel were on duty during the incident in question. These allegations alone plausibly support a claim that Defendant knew or should have known that a crime may occur due to dangers at or near the premises during crowded periods. However, the extent of Defendant's knowledge in this case has yet to be explored. Discovery may reveal that other more serious crimes had occurred at or near the theater and that Defendant had knowledge of such crimes. Further, as the Court noted at the hearing, discovery might show that Defendant had knowledge of and/or concern for the numerous mass shootings that had taken place in the United States in recent times. As the CPLA demonstrates, Defendant, a landowner, has a

higher duty of care to its patrons, or "invitees" (*Wycoff*, 251 P.3d at 1265), and the extent of its knowledge of such duty should be explored.

In fact, even the opinions on which Defendant relies in its briefing for finding no duty "as a matter of law" (which, as set forth above, are not applicable to a CPLA analysis) are reached after discovery was completed.   For example, in *Lopez*, the court acknowledged the necessity of reviewing the "'totality of the circumstances, including the nature, condition and location of the defendant's premises" in engaging in a duty analysis.  *Lopez*, 193 Cal. App. 3d at 509.  The court in *Lopez* considered not only the types of crimes that had actually occurred at or near the restaurant, but also the number of mass shootings that had occurred in the United States at that time to conclude:

> Huberty's deranged and motiveless attack, apparently the worst mass killing by a single assailant in recent American history,[6] is so unlikely to occur within the setting of modern life that a reasonably prudent business enterprise would not consider its occurrence in attempting to satisfy its general obligation to protect business invitees from reasonably foreseeable criminal conduct.

*Id.* at 509-10.  The same is true in other cases cited by Defendant.  *See supra* at 15, n. 4.[7]  Although

---

[6]In *Lopez*, a decision issued in 1987, the Court noted that nine motiveless mass shootings had occurred in the United States in the span of 38 years (five had occurred in the previous five years).  *Lopez*, 193 Cal. App. 3d at 510 n. 9.  Recently, ABC News reported a total of 14 mass shootings in the United States between 2009 and 2012 – four in 2009, one in 2010, three in 2011 and six in 2012.  Cristina Costantini, *A Look at Mass Shootings in the United States*, ABC News (Dec. 14, 2012), http://abcnews.go.com/ABC_Univision/News/mass-shootings-rise-us/story?id=17978004.  It may well be that events such as these remain so random, unpredictable and uncommon that no liability can be imposed upon the theater, but that decision shall await another day.  For the time being, the Court believes discovery is necessary to address foreseeability.

[7]A week following the December 14, 2012 hearing and without prompting by this Court, Defendant filed a document titled, "Supplemental Authority in Support of the Motions to Dismiss."  In the supplement, Defendant lists several cases in support of its argument that "trial courts have dismissed third-party criminal conduct cases at the Rule 12 stage."  A review of Defendant's cited cases reveals they are materially distinguishable from the present case as

these cases are not necessarily applicable to an analysis under the CPLA, they demonstrate that even when determining a duty "as a matter of law," courts generally consider the totality of the circumstances and all applicable evidence.

Therefore, based upon the CPLA's imposition of a duty of care to a landowner, the statute's express limitation of a court's role in deciding the existence and scope of such duty, and a finding that Plaintiffs have plausibly stated claims under the CPLA pursuant to either theory of recovery,

---

follows: (1) in *Schwartz v. Matol Botanical Int'l*, No. 91-2068, 1992 WL 229286, at *2 (6th Cir. Sept. 17, 1992), the court affirmed the trial court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of a negligence claim, finding that the defendant owed no duty under Michigan law to a plaintiff who was raped while attending a seminar, "particularly when, as here, the business is not the owner/occupier of the land upon which the attack occurred."; (2) in *Stewart v. Kids Inc. of Dallas*, 261 P.3d 1272, 1277 (Or. Ct. App. 2011), the court affirmed the trial court's dismissal of a negligence claim against a landowner citing applicable Oregon cases for the proposition that, "even when a plaintiff alleges a special relationship as the basis for the defendant's duty, the scope of that [particular] duty may be defined or limited by common-law principles such as foreseeability."; (3) the opinion in *Gray v. McDonald's Corp.*, 874 S.W.2d 44, 47 (Tenn. Ct. App. 1993) was abrogated by the Tennessee Supreme Court's opinion in *McClung v. Delta Square Ltd. P'shp*, 937 S.W.2d 891, 905 (Tenn. 1996), which after considering the evidence on summary judgment, found that issues of fact existed concerning whether the defendant business owed a duty to take reasonable steps to protect the plaintiff customer from having been abducted from the parking lot and, later, raped and murdered; (4) in *Petrauskas v. Wexenthaller Realty Mgmt., Inc.*, 542 N.E.2d 902, 908 (Ill. Ct. App. 1989), the court affirmed the trial court's dismissal of a negligence claim against a landlord based upon common-law negligence principles and citing an Illinois Supreme Court case for the general rule that a landlord does not have a duty to protect tenants from the criminal acts of third persons on the premises, unless there is a showing that the landlord failed to keep the common areas of his building in a reasonably safe condition or unless the plaintiff can show prior incidents similar to the one complained of and which are connected with the physical condition of the premises; (5) in *Zimring v. Wendrow*, 485 N.E.2d 478, 482 (Ill. Ct. App. 1985), the court affirmed the trial court's dismissal of a negligence claim based upon the "premises doctrine" in effect in Illinois at the time of the injury, for which a plaintiff must plead sufficient facts showing that defendant landowner failed to warn the plaintiff licensee of concealed defects known to the defendant or injured plaintiff by wilful and wanton conduct; and (6) in *Sugarman v. Equinox Holdings, Inc.*, No. 108044/08, 2008 WL 5264642, at *7 (N.Y. Sup. Ct. Dec. 15, 2008), the trial court, analyzing common-law negligence principles in New York, found the defendant health club owed no duty to the plaintiff customer where the plaintiff failed to allege facts demonstrating a pattern of criminal or violent behavior by the third party who assaulted him on the premises.

the Court respectfully recommends that the District Court deny Defendant's motion to dismiss Plaintiffs' claims for relief under the CPLA.

## II.     Negligence Claims

Defendant argues that Plaintiffs may not allege negligence or wrongful death claims[8] in addition to CPLA claims, since the CPLA provides the exclusive remedy for Plaintiffs' claims against the Defendant.  Plaintiffs acknowledge that the CPLA has abrogated all negligence claims against a landowner, but counter that they have claims against Defendant for failure to train employees to monitor the premises and respond to emergencies, which might not be raised against Defendant as a "landowner."  Plaintiffs assert that their claims should not be dismissed prior to discovery or to an answer from the Colorado Supreme Court to a question certified by the Tenth Circuit (in an unrelated case) concerning whether the CPLA applies to injuries caused by a landowner during an activity not directly or inherently related to the land.

The Colorado Supreme Court has made clear, and other courts have agreed, that the CPLA has abrogated all common law torts against landowners in Colorado.  *See Vigil*, 103 P.3d at 329 ("our analysis of the premises liability statute convinces us that the General Assembly clearly and manifestly expressed its intent, through the plain language of the statute, to abrogate the common law of landowner duties"); *Wycoff*, 251 P.3d at 1265 ("[t]he Act provides the sole remedy against landowners for injuries on their property."); *see also Wyle v. Skiwatch Condominium Corp.*, 183 F. App'x 760, 762 (10th Cir. 2006) ("Colorado's premises liability statute provides the exclusive remedy against a landowner for injuries sustained on the landowner's property.").  Therefore, so

---

[8]All Plaintiffs allege negligence claims; however, only Plaintiffs Jon Boik, Mary Theresa Hoover, Jerri Jackson, Gregory and Rena Medek, and Ian Sullivan allege wrongful death claims.

long as a person alleges injury that occurred on the property of another and arose out of a condition

of the property or by activities conducted on the property, the claim must be brought solely under

the CPLA.

Plaintiffs argue that their claims for failure to train employees to monitor the premises and

respond to emergencies may not arise against Defendant in its role as a "landowner."  However,

courts in Colorado have determined that the CPLA abrogates claims of negligent training,

supervision and retention when the claims relate to conditions of or activities occurring on the

property.  *See Casey v. Christie Lodge Owners Assoc., Inc.*, 923 P.2d 365, 367-68 (Colo. App. 1996)

(plaintiff's claims that defendant negligently supervised and retained its employees were related to

condition of the premises and, thus, were barred by CPLA); *Danielson v. Wal-Mart Stores, Inc.*, No.

06-cv-00053-EWN, 2006 WL 2385215, at *3 (Aug. 17, 2006) (citing *Vigil*, court found plaintiff's

claims for negligent hiring, training and supervision were abrogated by the CPLA).  Here, Plaintiffs'

claims for Defendant's alleged failure to train employees to monitor the premises and respond to

emergencies are clearly related to injuries that occurred on Defendant's property and arose out of

a condition of the property or by activities conducted on the property.

Plaintiffs also assert that the Court should await a decision by the Colorado Supreme Court

as to the following question certified by the Tenth Circuit in *Larrieu v. Best Buy Stores, L.P.*, No.

11-1387 (July 3, 2012): "Does Colorado's Premises Liability Act (Colo. Rev. Stat. § 13-21-115)

apply to injuries caused by a defendant-landowner's employee during an activity not directly or

inherently related to the land?"  Plaintiffs make no argument in support of their request to await the

decision, other than to state that "the scope of the [CPLA] is currently under review."

The Court finds that an answer to the certified question would not affect a Rule 12(b)(6)

analysis in this case of whether the Plaintiffs' negligence claims are plausibly stated.  That is, in *Larrieu*, the cause of the injury was undisputed; the plaintiff's injury was caused when the plaintiff and defendant's employee were carrying a truck's tailgate on the defendant's property, and the tailgate dropped on the plaintiff when he tripped and fell.  All parties in *Larrieu* agree that the injury was caused by an activity on defendant's property.  Here, however, the "cause" of Plaintiffs' injuries is disputed and it has not been determined whether the cause was due to a condition of or activity occurring on the property; thus, an answer in either the positive or the negative to the certified question does not impact the Plaintiffs' claims at this stage of the litigation.  Accordingly, without persuasive argument or applicable authority, the Court finds that awaiting an answer from the Colorado Supreme Court is unnecessary for a determination of whether Plaintiffs' claims are abrogated by the CPLA.

As set forth above, Plaintiffs' factual allegations state claims under the CPLA.  Absent allegations that Plaintiffs' injuries occurred other than on Defendant's property and did not arise out of a condition of the property or by activities conducted on the property, and in accordance with prevailing case law, the Court concludes that Plaintiffs' claims for negligence and wrongful death are abrogated by the CPLA and must be dismissed.  Therefore, the Court respectfully recommends that the District Court grant the Defendant's motion to dismiss the Plaintiff's negligence and wrongful death claims, as applicable.

## **CONCLUSION**

Plaintiffs state plausible claims under the Colorado Premises Liability Act ("CPLA").  However, the CPLA abrogates all tort claims against landowners in Colorado; thus, Plaintiffs fail to state claims for negligence and wrongful death in this case.  Accordingly, the Court respectfully

RECOMMENDS the Defendant's Motions to Dismiss [filed October 18, 2012 (12cv2514); docket #15], [filed October 18, 2012 (12cv2517); docket #19], [filed November 7, 2012 (12cv2687); docket #17], [filed October 18, 2012 (12cv2704); docket #7], [filed October 18, 2012 (12cv2705); docket #6], [filed October 18, 2012 (12cv2706); docket #7], and [filed November 6, 2012 (12cv2900); docket #7] be **GRANTED in part and DENIED in part** as set forth herein.

Dated at Denver, Colorado, this 24th day of January, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

23